Jones vs. Freeman.

## No. 12,306.

### J. W. JONES VS. J. S. N. FREEMAN.

The plaintiff, contesting an election, relying on a paper purporting to be tally list of the votes, not attested by the commissioners appointed by the Board of Supervisors, and on ballots with the paper delivered to the clerk of the court by one of such commissioners and a person not shown to have had any official relation to the election, the plaintiff producing no supporting testimony that the paper and ballots exhibit the result of the election, has no cause of complaint, if, in that condition of the proof, the jury give controlling effect to the compilation of votes and proclamation by the Board of Supervisors also placed before the jury, announcing the election of defendant; under the law, that proclamation standing as evidence of defendant's election, unless overthrown by proof. Election act of 1894, No. 181, Secs. 36, 37, 40, 42.

APPEAL from the Tenth Judicial District Court for the Parish of Natchitoches. *Hunter, J.*

*Jack, Tucker & Fleming* for Plaintiff, Appellant.

*Pierson. & Porter* and *Scarborough & Carver* for Defendant, Appellee.

Argued and submitted February 16, 1897.
Opinion handed down March 29, 1897.

The opinion of the court was delivered by

MILLER, J. The plaintiff appeals from the judgment dismissing his petition contesting the election of defendant as sheriff of the parish of Natchitoches.

The petition charges, in substance, that the Board of Supervisors excluded in their compilation of the votes cast at the election the vote cast at Ward 3 of the parish, and thus deprived petitioner of the count in his favor of a majority of one hundred and eighty-seven he claims to have received at that poll as a candidate for sheriff. At other polls he charges the receiving of illegal votes, the exclusion of legal votes and other wrongful acts on the part of the commissioners to his prejudice by which he claims he was deprived in the count of a number of votes cast in his favor, and he alleges that the votes cast for him, but not counted by the Board of Supervisors, were

enough to overcome the majority of sixty-five in favor of the defendant, proclaimed as the result of the election by the Board of Supervisors. The answer of the defendant avers that though given a majority only of sixty-five by the compilation and proclaimed result, he was, in fact, entitled to more, and the answer details the illegal votes alleged to have been returned for the plaintiff by which defendant's majority was reduced. The answer charges that in Ward 3, alleged by plaintiff to have given him a majority of one hundred and eighty-seven, that riotous men took possession of the polls: by threats and intimidations compelled two of the appointed commissioners and the sheriff to leave; then appointed commissioners of their own, who received one hundred and ninety-two illegal votes cast for plaintiff. The answer further charges the attempt by violence to compel the Board of Supervisors to compile these illegal votes in plaintiff's favor and avers that the entire proceedings at that poll were illegal and no votes should be counted as cast at that poll except thirty-five, of which the defendant received twenty-two, cast while the election was conducted by the lawful commissioners and before the mob took control of the polls.

The plaintiff by motion and the plea in bar, as it is termed, sought to exclude from the defendant's answer, all defences, except those relating to the grounds of contest stated in the petition. There were other preliminary questions arising on the applications to count the votes before the trial; on rules to compel security for costs, and other questions which have been discussed in the brief. But in our view these questions require no consideration under the agreement of the parties as to the issue for decision.

The plaintiff excepted to the allowance of the jury, the plaintiff insisting that under the law the trial must be by the court without a jury. The Revised Statutes prescribed the jury trial and a majority verdict as the mode to determine contested election cases. Under the later act of 1877 and that of 1894, now in force, the method of trial is to be that for ordinary cases, save that election contests are to have a preference. As trial by jury is secured to all suitors who claim it, we find no basis to deny a jury in a contested election case. Act No. 24 of 1894, No. 24 of 1877. Code of Practice, Arts. 494, 495.

On the trial the plaintiff offered in evidence the compilation of the votes and the proclaimed result announcing defendant's election; there was the admission that the compilation embraced no votes at

poll three; the clerk of the court testified that the box produced by him, accompanied with a paper purporting to be the tally lists of the votes at that poll, had been delivered to him one or two days after the election, the seal on the box when delivered unbroken, until on a previous occasion it was produced in court, and that this delivery was by D. W. Childers and B. F. Adams. On the cross-examination by defendant's counsel the witness stated the commissioners for that poll appointed by the Board of Supervisors were H. H. Oliver, D. Childers and W. M. Finley. The plaintiff offered successively the paper accompanying the box signed by H. T. Brown, D. W. Childers and B. F. Adams and the ballots contained in the box. To this defendant's counsel objected that the paper was not attested by the commissioners of election appointed by the board, that the ballots rested solely on that paper, and hence neither the paper or ballots could be admitted in evidence, the defendants supporting the objection by the affidavit of the two appointed commissioners of the violence at the poll, the control of the mob, and that no election had been held there. The objection overruled, the defendant reserved the bill. The minutes of evidence show that the affidavit was offered in evidence. In this condition of the proof the plaintiff closed his case, the minutes showing the case was rested on both sides on the record as made up by the stenographer's notes, " all other demands given up." The agreement thus restricted the issue to the alleged vote at poll three and the effect to be given the evidence before the jury.

The argument for plaintiff is, substantially, that the paper accompanying the box and the ballots in it showed the plaintiff's election. The election law provides that the duly appointed commissioners shall conduct the election, count the ballots, replace them in the box sealed, and deliver the tally lists, list of voters, compiled statements and ballot boxes to the Board of Supervisors. On the returns thus made the board is to compile the total vote at all the polls, proclaim the result, and on that proclamation the commission issues to the successful candidate thus announced. Act 181 of 1894, Secs. 36, 37, 40, 42. In this case the paper relied on by plaintiff is not attested by the commissioners appointed by the board, but is signed by one only and two persons not shown to have had any official relation to the election. It is urged on behalf of the plaintiff that the law authorizes one of the commissioners to act, and to appoint others. But .

one can appoint only, when the others appointed are not present. So if none of the commissioners appointed by the board are present, the voters can select. But in a contested election when one of the parties relies solely on alleged returns not signed by the commissioners, nor transmitted to the board, the burden is on him to show the condition which under the law call to the functions of returning officers, others than those appointed by the board. The presumption the law attaches to acts of public officers is invoked to sustain this paper. But, at least, before that presumption can exert any influence, it must appear that the appointing power of the single commissioner was exerted. There is no explanation in the testimony of the signatures of the strangers to the returns, nor allegations or proof that one paper was ever transmitted to the board. On the contrary it is shown the paper with the box came into the hands of the clerk from one only of the appointed commissioners and a stranger. The law, scrupulous to preserve the integrity of the ballots actually cast, guards against any substitutions by the requirement that the commissioners themselves, or, at least, two of them, shall carry the ballot boxes and returns, not to the clerk, but to the Board of Supervisors. Act No. 181 of 1894, Secs. 37, 47. In our opinion neither the paper or the ballots were put before the jury under the sanctions prescribed by law to make either evidence in the case. The defendant's answer, *i. e.*, that part referring to the beginning of the elections at poll 3, was formally offered in evidence by plaintiff. The averments in the answer on this point were, in effect, the opening of the election, the violence later, the control of the mob, the voting up to the time of that control giving defendant a majority and that 192 illegal votes for plaintiff were thereafter received by those who took charge of the poll and counted by them for plaintiff. The answer, in our view, did not improve plaintiff's case. Resting on the basis supposed to be afforded by the paper, the ballots, the testimony of the delivery of the box and paper, confronted by the compilation of the votes and the official announcement of the defendant's election, the plaintiff chose to rest his case. The jury were thus permitted to consider all the evidence produced by plaintiff, notwithstanding defendant's objection to the paper and ballots. Without any supporting testimony the jury might well refuse to be guided by a paper and alleged ballots, the paper attested by the commissioners ap-

Jones vs. Freeman.

pointed by the board, nor accompanied with the poll list and with no explanation on that subject and with the proof that neither ballots or paper came through the channels provided by law or were laid before the board. In this condition of the record, in our opinion, the plaintiff has no cause for complaint of the controlling effect, the jury gave to the compilation and proclaimed result of defendant's election made by the officials charged with the duty of ascertaining and announcing the result, and which stands as the legal evidence of that result, until it is overthrown by proof.

We have given attention to the discussion in the brief, whether the jury should have considered the affidavit of the two commissioners detailing the occurrence at poll 3, and stating that the votes claimed by plaintiff at that poll were illegal. The affidavit is shown to have been offered in connection with defendant's objections to the testimony, and also to have been offered on the merits. On the rule for new trial, the contention was the paper should not have been considered by the jury. Its only function, it is claimed, was to support the objections to the testimony. The learned counsel for plaintiff evinces the sincerity of his appreciation that the affidavit should be restricted to the objections. On the other hand, the counsel for defendant certainly understood the paper was before the jury on the merits. In that faith, relying on the minutes, the defendant closed his case. The argument to the jury on both sides, we gather from the affidavits, was to some extent devoted to that paper. Under these circumstances, we do not feel at liberty to set aside a verdict upon the ground that notwithstanding the note of evidence the affidavit is not to be deemed offered in evidence, and on the assumption it exerted an improper influence on the jury.

The election law makes liberal provision to maintain the actual election by the votes cast. No election, it is declared and repeated, shall be vitiated by the omission of duties on the part of the commissioners or of any other instrumentality to conduct the election. While it gives *prima facie* effect to the proclaimed result, the party aggrieved by that proclamation is reserved the fullest opportunity to overthrow that announcement by proof that he received the majority of votes. The carefully framed petition of the plaintiff contained all the averments to give him the office, if sustained by the proof. It must be borne in mind that had he chosen to offer the testimony, the defendant would have had the right to offer opposing proof.

The plaintiff conceived he could rest on the record as made up by the stenographer. The defendant was content to stand on it. The plaintiff complains of the requirement of security from him for costs, and from the argument we infer that requirement had some influence in inducing the agreement to submit. While it is to be regretted that any litigant should be embarrassed in asserting his right by inability to provide for costs, it must be apparent that circumstance can exert no influence on our decision.

The rule for the new trial was mainly devoted to the influence supposed to be exerted upon the jury by the affidavit, and, on that ground the application for another trial is earnestly insisted upon here. We have already expressed our views on that point, and our conclusion is the court did not err in refusing the new trial.

We have considered the case in all its aspects and find no basis on which we can disturb the verdict.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.